RECEIVED
IN LAKE CHARLES, LA.

AUG 22 2013

TONY R. MOORE, CLERK
BY_____
             DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| NIKKI SCHANNETTE, ET AL | : | DOCKET NO. 2:12-CV-01416 |
| VS. | : | JUDGE MINALDI |
| ROBYN DOXEY, ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [Doc. 14], filed by the defendants, Robyn Doxey, Ann Dugas, Brooke Benny, Debbie Ambrose, John Nelson, and Genica Collins (collectively, the "DCFS defendants"). The plaintiffs, Nikki and Barry Schannette, individually and on behalf of their minor children Be.S., K.S., L.S., Ba.S., and J.S., timely filed a response [Doc. 18]. As the motion is fully briefed, the undersigned finds that it is ripe for review. For the foregoing reasons, the DCFS defendants' motion is GRANTED.

## FACTUAL BACKGROUND

This case arises from the alleged unlawful actions of various Department of Children and Family Services, Child Welfare Division ("DCFS") and Calcasieu Parish Sheriff's Office employees, in their official and individual capacities, in temporarily taking away custody of the plaintiffs' five minor children and arresting the plaintiffs in connection with the custody case.[1]

The entire chain of events began in May 2011, when Doxey, a DCFS case worker, received an "anonymous report," which prompted her to interview the plaintiffs concerning their

---

[1] Pls.' Compl., [Doc. 1], at ¶ 6.

1

child Be.S. (who was having trouble at school).[2] On May 31, 2011, Doxey secured an ex parte Oral Instanter Order to take custody of the plaintiffs' five children, including Be.S, even though Doxey's report was based on "hearsay" and there were allegedly no signs of neglect or abuse.[3] After the Instanter Order issued, two DCFS caseworkers and three Sheriff's Deputies arrived at the plaintiffs' residence on May 31, 2011, at which time the plaintiffs realized for the first time that DCFS was taking custody of their children.[4] The plaintiffs complied with the Sheriff's Deputies' directions and surrendered custody of their children at that time.[5] Despite this, the plaintiffs assert that the Sheriff's Deputies subsequently charged the plaintiffs with obstruction of the Instanter Order and arrested them.[6] As a result of these actions, the DCFS defendant, Benny, separated the plaintiffs from their five children from August 4, 2011 until August 12, 2011, by placing each child in a separate foster home.[7] The plaintiffs assert that the situation was further complicated when various DCFS workers, including Collins, Ambrose, Nelson, Dugas, and Doxey "slandered" the plaintiffs by accusing both of sexually abusing the children, in addition to accusing Mr. Schanette of drug abuse.[8]

---

[2] *Id.* at ¶ 21.

[3] *Id.* at ¶¶ 22-23.

[4] *Id.* at ¶¶ 30-32.

[5] *Id.* at ¶ 34.

[6] *Id.* at ¶ 35. As a result of her arrest, Mrs. Schanette also asserts that she lost her job.

[7] *Id.* The plaintiffs allege an "additional cause of action" based on the fact that one of their children was placed in the foster home of Lan Le, "who was charged shortly thereafter with severely burning a two-year-old's legs and feet." *Id.* It appears that the two-year-old mentioned in the complaint was not the plaintiffs' child. The plaintiffs allege that this rises to criminal negligence, since Benny did not properly screen, monitor, or supervise the foster homes in which she placed the children.

[8] *Id.* at ¶¶ 43-44. Because of DCFS's drug abuse allegations, Mr. Schanette voluntarily submitted to two drug tests, on July 6 and 13, 2011 (negative). When DCFS conducted a drug test on him on July 21, 2011, however, he failed. *Id.* at ¶ 51. Charges have not yet been filed against Mr. Schanette.

On August 11 and 12, 2011, Judge Wyatt of the Fourteenth Judicial Court of Calcasieu Parish held a hearing regarding the plaintiffs' children's custody.[9] The judge ultimately ordered that the children be returned to the plaintiffs with assistance from the state, on the condition that the plaintiffs admit their children were "in need of care."[10] DCFS then submitted a case plan which required the plaintiffs to follow a set treatment regimen, which the plaintiffs refused to sign because of alleged arbitrariness within the plan.[11] DCFS closed the case on September 17, 2011, based on the plaintiffs' noncompliance.[12]

Following these events, the plaintiffs brought this action, alleging violations of their rights under the Fourth, Sixth and Fourteenth Amendments of the U.S. Constitution. The plaintiffs also asserted state law negligence and failure to supervise claims against the DCFS supervisor defendants.[13] In the complaint, the plaintiffs allege that the various defendants: (1) violated their substantive due process right to care and custody of their children;[14] (2) violated Mr. Schanette's rights to procedural due process in the pending criminal case against him;[15] (3) subjected the plaintiffs to false arrest, false imprisonment, and intentional infliction of emotional distress;[16] (4) libeled the plaintiffs by publishing/broadcasting certain defamatory statements

---

[9] *Id.* at ¶ 48.

[10] *Id.*

[11] *Id.* at ¶ 50.

[12] *Id.*

[13] *Id.* at ¶¶ 102-109.

[14] *Id.* at ¶¶ 54-62,

[15] *Id.* at ¶¶ 63-71.

[16] *Id.* at ¶¶ 72-80.

about the plaintiffs during the child custody investigation;[17] (5) slandered the plaintiffs by accusing them of sexually abusing their children;[18] (6) violated their guarantee of access to the courts by requiring that they admit their children were "in need of care" as a condition of their return;[19] and, (7) violated the plaintiffs' right to be informed of the nature and cause of the child abuse accusations against them, including the right to confront the witnesses who accused them of said abuse.[20] They seek: (1) a declaratory judgment declaring unconstitutional the policy enforced by DCFS (removing children based on anonymous testimony when suspicion of abuse is "attenuated"); (2) actual damages in the amount of $2,536,600, plus compensatory and punitive damages; (3) an order declaring La. Rev. Stat. ann. 14:133.1 unconstitutional "if th[e] court concludes that a person can be arrested for Obstruction of Court Order when the person has no prior knowledge . . . that the court has issued an order;" (4) attorney's fees; and, (5) an order declaring unconstitutional the requirement that parents admit their children are in need of care when the factors that define "in need of care" have not been proven.[21]

The DCFS defendants now move to dismiss the plaintiffs' claims against them, arguing that: (1) the court lacks subject matter jurisdiction over the plaintiffs' official capacity claims because DCFS enjoys immunity from monetary damages under the Eleventh Amendment; (2) the plaintiffs do not have a viable cause of action against the DCFS employees in their individual capacities based on the doctrine of qualified immunity; and, (3) the plaintiffs' state law claims should be dismissed for failure to state a claim.

---

[17] *Id.* at ¶¶ 81-87.

[18] *Id.* at ¶¶ 88-101.

[19] *Id.* at ¶¶ 110-113.

[20] *Id.* at ¶¶ 114-17.

[21] *Id.* at p. 42.

## RULE 12(B)(1) AND RULE 12(B)(6) STANDARDS

The DCFS defendants first argue that the plaintiffs' official capacity claims against them should be dismissed for lack of subject matter jurisdiction based on the state's Eleventh Amendment sovereign immunity. Motions to dismiss based on Eleventh Amendment sovereign immunity are analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which provides that a court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *St. Tammany Parish ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161(5th Cir. 2001).

The remainder of the DCFS defendants' requests for dismissal are analyzed under Fed. R. Civ. P. 12(b)(6). A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Determining whether a complaint states a plausible claim for relief. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id.* Courts will not accept as true "conclusory allegations, unwarranted factual

5

inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)); *see also Iqbal*, 556 U.S. at 664, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.")

## LAW AND ANALYSIS

### I.  The Eleventh Amendment and Claims against the DCFS Defendants in their Official Capacities

Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This broad grant of immunity also extends to federal suits against a state brought by the citizens of that state. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

A state need not be named in a complaint in order to trigger the provisions of the Eleventh Amendment, as it bars any suit where a state is a "real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Eleventh Amendment immunity covers state agencies that may be properly characterized as arms of the state. *Porche v. St. Tammany Parish Sheriff's Office*, 67 F.Supp.2d 631, 632 (E.D. La. 1999). Moreover, the Eleventh Amendment bars claims for damages when the claimant is suing state officers in their official capacities, and the damages would be paid out of the state treasury. *Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991).

To ascertain whether the state is the real, substantial party in interest, a court must consider:

(1) Whether the state, through statutes or case law, views the entity as an arm of the state;

(2) the source of the entity's funding;

(3) the entity's degree of local autonomy or degree of authority independent from the state;

(4) whether the entity is concerned primarily with local as opposed to statewide problems;

(5) whether the entity has the authority to sue and be sued in its own name; and

(6) whether the entity has the right to hold and use property.

*Hudson v. City of New Orleans,* 174 F.3d 677, 681 (5th Cir. 1999). While none of these elements are dispositive, the second element is typically the most important. *Id.* at 681–82.

The plaintiffs apparently concede that, by suing the DCFS defendants in their official capacities, they are actually suing the state and the DCFS itself, thus indicating that they agree DCFS is an "arm of the state." Indeed, at least one other federal court in Louisiana has found that DCFS is an arm of the state. *See Harmony Center, LLC v. Jindal,* No. 10-621-BAJ-CN, 2010 WL 4955168 (M.D. La., Nov. 30, 2010). Further, La. Rev. Stat. ann. § 46:51, which describes the duties of the DCFS, provides that the DCFS is tasked with "administer[ing] the public assistance welfare laws of the *state*" as they relate to child care. Additionally, La. Rev. Stat. ann. § 46:101 provides that *state treasury* funds will fund the DCFS. All of these factors point to a finding that the DCFS is an arm of the state.

The court notes that there are three exceptions to the general grant of Eleventh Amendment immunity, however: (1) the *Ex Parte Young* exception, which provides that individuals can sue state officials for injunctive or declaratory relief to correct an ongoing

violation of federal law (*Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 741 (1908)); (2) the waiver exception, which provides that a state can waive its immunity by voluntarily invoking federal-court jurisdiction or making a clear declaration that it intends to submit itself to federal-court jurisdiction (*Meyers ex. rel. Benzing v. Tex.*, 410 F.3d 236, 241 (5th Cir. 2005)); and, (3) the abrogation exception, which provides that Congress can abrogate a state's immunity without a state's consent (*Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)).

While it is not entirely clear from the plaintiffs' opposition brief, it appears that the only potential exception that *could* apply, based on the plaintiffs' complaint, is the *Ex Parte Young* exception. In their complaint, the plaintiffs request a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that two DCFS-related policies are unconstitutional:[22] (1) the DCFS-enforced policy of removing children based on anonymous testimony when suspicion of abuse is "attenuated" and (2) the requirement that parents admit their children are in need of care when the factors that define "in need of care" have not been proven is unconstitutional.[23] While pled in general terms, it appears that the plaintiffs take issue with the DCFS actions as they applied to the plaintiffs specifically.

Declaratory relief is within the *Ex Parte Young* doctrine's reach, but only when there are *ongoing* or *threatened* violations of federal law. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) (emphasis added). Indeed, a court may not issue advisory opinions. While the Declaratory

---

[22] While the plaintiffs also request an order declaring La. Rev. Stat. ann. 14:133.1 unconstitutional "if th[e] court concludes that a person can be arrested for Obstruction of Court Order when the person has no prior knowledge . . . that the court has issued an order;" this action relates to actions taken by the Sheriff's Deputies, and not the DCFS defendants.

[23] The DCFS defendants do not make any substantive attacks against these requests for declaratory relief, other than noting that the plaintiffs have failed to serve the Louisiana Attorney General "as required when seeking a declaration of a Louisiana statute as unconstitutional." This argument is without merit, as both Attorney General Buddy Caldwell and the Office of Risk Management were served in July 2012. Aff. of Service, [Doc. 12].

Judgment Act allows federal courts to make a declaration of rights "[i]n a case of actual controversy within its jurisdiction," the Supreme Court has cautioned against issuing declaratory judgments "on issues of public moment, even falling short of constitutionality, in speculative situations." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 581, 7 L.Ed.2d 604 (1962). Accordingly, a court can only entertain a claim for declaratory relief if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality.*" *Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (emphasis in original) (quoting *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

In this case, the plaintiffs make cursory allegations that DCFS employees engaged in unconstitutional actions in the past: namely, taking custody of their children based on thin evidence of abuse. There are no allegations that these actions are ongoing, and indeed any claim that they are ongoing would not rise above the level of "pure speculation." *See Schwimmer v. Kaladijan*, 834 F.Supp. 93, 98 –99 (S.D. N.Y. 1993) (denying parent-plaintiffs' request that the court issue a declaratory judgment declaring that defendant social workers had violated their constitutional rights by temporarily taking custody of the plaintiffs' children despite tenuous evidence of child abuse). Accordingly, as the court has found that DCFS enjoys Eleventh Amendment immunity, and there are no applicable exceptions to this immunity, dismissal of the official capacity claims against the DCFS defendants is appropriate.

## II.   Qualified Immunity and Claims against the DCFS Defendants in their Individual Capacities

The undersigned will next address whether the DCFS defendants are entitled to qualified immunity. To determine whether a defendant may successfully avail himself of the defense of

qualified immunity with regard to individual capacity claims under Section 1983, the court undertakes a two-step analysis.  First, the court must determine whether the plaintiff has alleged "the violation of a clearly established constitutional right." *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993) (quoting *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)).  Second, if such a violation is alleged, the court next considers "whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998) (internal citations omitted) (emphasis in original).

When evaluating whether a plaintiff stated a constitutional violation, the courts look to currently applicable constitutional standards. *Spann*, 987 F.2d at1114–15.  However, the objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (finding that qualified immunity shields government officials, provided "their actions could reasonably have been thought consistent with the rights they are alleged to have violated.").

Turning to the specific constitutional rights at issue, state child care workers such as the DCFS defendants are entitled to qualified immunity in the performance of discretionary, non-prosecutorial functions. *See Stem v. Ahearn*, 908 F.2d 1, 5 (5th Cir.1990), *cert. denied*, 498 U.S. 1069 (1991). Whether the DCFS defendants enjoy qualified immunity is guided by a trilogy of cases from the Fifth Circuit, *Hodorowski v. Ray*, 844 F.2d 1210 (5th Cir.1988), *Doe v. State of La.*, 2 F.3d 1412 (5th Cir.1993), and *Kiser v. Garrett*, 67 F.3d 1166 (5th Cir.1995), in which the Fifth Circuit found that social workers are entitled to qualified immunity for actions taken during

10

the course of investigating allegations of child abuse.  Reviewing these cases, the *Doe* case is the most on point with the procedural and factual background at bar.

In *Doe v. State of Louisiana,* the plaintiff alleged in his complaint that a case worker (George) and her supervisor (Bennett) "manipulated the [plaintiff's] children to give false evidence ... created false evidence, withheld and ignored exculpatory evidence, and made misrepresentations to two judges and [a] district attorney." *Doe*, 2 F.3d at 1415.  Specifically, the complaint provided that the *Doe* defendants, after receiving a notification from a doctor that the plaintiff-father had abused his daughter, launched into an abuse investigation. *Id.* at 1414.  George interviewed the daughter outside of her mother's presence, immediately informing the mother afterwards that the interview had provided "conclusive evidence of abuse." *Id.*  George would not allow the mother to view a videotape of the interview (despite being told initially that it was videotaped), however, and was later informed that the tape did not exist.  *Id.*  While the investigation was ongoing, George requested that the victim's brother (the plaintiff's son) travel from North Carolina (where he lived with the plaintiff-father) to Louisiana to be interviewed about the allegations of abuse. *Id.*   Before the son arrived, both Bennett and George "secretly wrote" to the court presiding over the abuse investigation related to the daughter, alleging that the son had also been sexually abused by the plaintiff and that the son was in "urgent danger." *Id.*  At a subsequent hearing, the court determined that George and Bennett had misrepresented findings of abuse regarding the daughter, and placed both the son and the daughter in the care of their paternal grandparents. *Id.*  George then interviewed the son, and, upon finding that the interview was "inconclusive," required that the son submit to a physical exam, which failed to produce evidence of sexual abuse. *Id.* at 1414–15.  Thereafter, George also falsely informed the district attorney that the daughter and son were now being sexually abused by their guardians

(the paternal grandparents), although this investigation was abandoned when the plaintiff's counsel intervened. *Id.* at 1415. At a later child-in-need-of-care proceeding, George admitted to fabricating the son's allegations of sexual abuse, and the court found that the evidence conclusively showed that neither child had been sexually abused by the plaintiff. *Id.*

Based on this fact pattern, the *Doe* plaintiff alleged that the social worker defendants interfered with his right to family integrity and his right to be free from malicious prosecution under the Fourteenth Amendment, because they had pursued an investigation of the plaintiff despite a lack of evidence of sexual abuse. *Id.* at 1415. The defendants filed a motion to dismiss in the district court based on qualified immunity. *Id.* at 1413. The district court denied the motion to dismiss, and the defendants filed an interlocutory appeal. *Id.*

On appeal, the Fifth Circuit reversed the district court's denial of the motion to dismiss based on qualified immunity. It rejected the plaintiff's argument that the defendants had violated his substantive due process liberty interest in the right to the care and custody of his children, because this right was not clearly established at the time of the defendants' actions. *Id.* at 1419. Like in the child care worker qualified immunity case preceding it, *Hodorowski*,[24] the *Doe* court explicitly distinguished the *Santosky* case, finding that the *Doe* facts also indicated an attempt to

---

[24] *Hodorowski v. Ray* dealt with whether qualified immunity would apply to social workers who had temporarily removed children from their parents' home without a court order. *Hodorowski*, 844 F.2d at 1215. At the district court level, the court had denied two of the defendant social workers' motions to dismiss based on qualified immunity, finding that they had violated the clearly established right of "family integrity." *Id.* at 1212. The Fifth Circuit noted that, in denying the motion to dismiss, the district court had cited (as the plaintiffs do in the case at bar), two Supreme Court cases which showed such a "clearly established the right of family integrity." *Id.* at 1217. First, the Fifth Circuit addressed *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), a case in which the Supreme Court held that a state cannot "sever completely and irrevocably the rights of parents in their natural child" unless the state established by clear and convincing evidence that the child was "permanently neglected." *Id.* at 747–48. The Fifth Circuit also mentioned *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), in which the Supreme Court held that due process required a hearing before the state could permanently terminate the parental rights of unmarried fathers. *Id.* at 649. The Fifth Circuit found these cases distinguishable, however, noting that they dealt with a state's attempt to *permanently*, as opposed to *temporarily*, sever the parent-child relationship. *Id.* Concluding, the court found that the plaintiffs could not satisfy the "clearly established" prong of the qualified immunity test, as the right to family integrity was too "nebulous" for the social worker defendants to have known that an attempt to obtain temporary custody of the children during an abuse investigation was a violation of a clearly established constitutional right. *Id.* at 1217.

temporarily, as opposed to permanently, sever the parent-child relationship. *Id.* The *Doe* court instead adopted as persuasive the reasoning in a factually similar First Circuit case, *Frazier v. Bailey*, 957 F.3d 920 (1st Cir. 1992). *Id.* at 1417. In *Frazier*, the First Circuit held that a social worker was entitled to qualified immunity, despite a plaintiff's allegations that the social worker interfered with the plaintiff's liberty interest by ignoring exculpatory evidence and programming the plaintiff's children to falsely accuse the plaintiff of sexual abuse. *Frazier*, 957 F.3d at 929. In coming to its conclusions that the social worker was entitled to qualified immunity as a matter of law, the *Frazier* court found that "the dimensions of [the] right to [family integrity] have yet to be clearly established." *Id.* at 931. Accordingly, in light of *Santosky*, *Hodorowski*, ("both procedural due process cases") and *Frazier*, the *Doe* court held that although the plaintiff had a substantive due process liberty interest in the care and custody of his children, the contours of that right were not sufficiently particularized at the time of the alleged unlawful conduct in order to consider the right clearly established. [25] *Id.* at 1418.

The *Doe* court next addressed whether a malicious prosecution cause of action under § 1983 would be available against social workers who intentionally concealed exculpatory evidence in a civil proceeding. *Doe*, 2 F.3d at 1419. The *Doe* court held that, while it was "unclear" whether malicious prosecution could be an independent cause of action under § 1983 based on its facts, a malicious prosecution claim might be actionable "in some instances: 'litigiousness which gives rise to a common law tort action for misuse of legal procedure may be so egregious as to constitute a violation of § 1983 as well, if the tort-feasor, under color of state law, subjects the tort-victim to a deprivation of constitutional dimension.'" *Id.* (citing *Beker*

---

[25] Following *Doe*, the Fifth Circuit extended this doctrine of qualified immunity to a child care worker defendant who had withheld exculpatory evidence and given false testimony in state court during the children's adjudication proceedings. *See Kiser v. Garrett*, 67 F.3d at 1173. Once again, the court found that the right to family integrity was still too nebulous to be considered clearly-defined for the purposes of qualified immunity, particularly in the context of a state's taking custody of a child during an investigation of parental abuse. *Id.*

*Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1189 (5th Cir. 1978)). Without deciding the question of whether the *Doe* defendants' actions were sufficiently egregious, the *Doe* court simply opined that "it can hardly be said that in light of the law in 1990 that the unlawfulness of [the social workers'] conduct was apparent. Consequently, 'there was no clearly established constitutional counterpart to an action for malicious prosecution.'" *Id.* at 1419.

Ignoring *Doe* and its ilk, the plaintiffs instead cite *Stanley* (which, as discussed *supra* footnote 24, is distinguishable because the *Stanley* case dealt with the *permanent* as opposed to the *temporary* removal of children from custody), *Morris v. Dearborn*, 181 F.3d 657 (5th Cir. 1999), and *Fyfe v. Curlee*, 902 F.2d 401 (5th Cir. 1990) to show that there is a clearly established constitutional right to family integrity. Reviewing *Morris* and *Fyfe*, however, these cases are distinguishable. The *Morris* court held that parent-plaintiffs' claims of a *teacher's* deliberate fabrication of abuse allegations against them fell "squarely within the well-established right to family integrity." *Morris*, 181 F.3d at 675. The contours of that right left no doubt that a teacher was not "free to fabricate sexual abuse allegations against her student's parents," thus leading to the conclusion that no teacher could have believed that such conduct was objectively reasonable. *Id.* This distinction is important because, unlike a teacher, *it is a primary part of a child care worker's job* to investigate abuse. Thus, the right to family integrity is too "nebulous" to alert a child care worker that a discretionary child abuse investigation would violate a clearly established constitutional right. *See Hodorowski*, 844 F.2d at 1217. In the *Fyfe* decision, the Fifth Circuit addressed an even more distinguishable fact pattern, finding that a mother's decision to send her child to a private school was protected conduct under the First Amendment and the "penumbra of familial privacy rights recognized by the Supreme Court." *Fyfe*, 902 F.2d at 403.

14

In the instant case, the court must take the plaintiffs' allegations in their petition as true. Thus, the court must accept that, following an anonymous tip-off from a source and an interview with the plaintiffs, Doxey fabricated allegations of child abuse, including sexual abuse, in order to obtain an ex parte Instanter Order, allowing the state to temporarily take custody of the plaintiffs' five children. While this case was ongoing, all of the DCFS defendants defamed the plaintiffs by continuing to accuse them of sexually abusing their children, in addition to accusing Mr. Schanette of drug abuse, even though two out of three drug tests Mr. Schanette submitted turned out negative.

Even taking all of the plaintiffs' allegations as true, because of the binding precedent in *Hodorowski, Doe* and *Kiser,* this court cannot rule that the plaintiffs have shown that the law was sufficiently clear so that reasonable social workers such as the DCFS defendants would have known that they violated the plaintiffs' rights by temporarily taking the children into custody, pending a child abuse investigation, and making reports of abuse. Thus, as the plaintiffs cannot meet their burden on the "clearly established" prong of the qualified immunity test, the DCFS defendants are entitled to qualified immunity on the plaintiffs' individual capacity claims against them.

## III.  Failure to State a Claim: State Law Claims

The DCFS defendants next argue that the plaintiffs' state claims should be dismissed for failure to state a claim. The undersigned will address each state claim in turn.

### A.  Procedural Due Process under the Article 1, Section 2 of the Louisiana Constitution

In addition to making a procedural due process claim under the Fourteenth Amendment of the United States Constitution, the plaintiffs claim relief under the due process provision of the Louisiana Constitution. Under the Fourteenth Amendment to the United States Constitution

and La. Const. Art. I, § 2 of the Louisiana Constitution of 1974, a person is protected against a deprivation of his life, liberty, or property without "due process of law."  The Louisiana Constitution's guarantee of due process does not vary semantically from the Due Process Clause of the Fourteenth Amendment. *Progressive Security Insurance Co. v. Foster*, 97–2985, p. 12 (La.4/23/98), 711 So.2d 675, 688.  Accordingly, federal jurisprudence is relevant in determining the nature and extent of La. Const. Art. I, § 2's due process protection.

In *Hodorowski, supra* footnote 24, the Fifth Circuit rejected the plaintiffs' procedural due process claim on facts more egregious to those at bar. *Hodorowski*, 844 F.2d at 1212 (rejecting plaintiff's procedural due process claim against defendant social workers who had taken the plaintiffs' children without a court order).  In this case, Doxey obtained a court order before the plaintiffs' children were taken into custody.  Subsequently, the plaintiffs were given a hearing in order to determine whether their children were in need of care, as required by law.  As federal jurisprudence has rejected a procedural due process cause of action, therefore, the plaintiffs' state procedural due process claims must similarly fail.

## B.  Negligence under La. Civ. Code art. 2315

The plaintiffs also make a claim under Louisiana's general negligence code provision, La. Civ. Code art. 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  It appears that the plaintiffs' allegations of negligence stem from the exact same alleged unconstitutional actions of the DCFS defendants, which have been addressed and rejected.  Accordingly, the plaintiffs' negligence claims under art. 2315 against the DCFS defendants must be dismissed.

## C.  Intentional Infliction of Emotional Distress

16

The plaintiffs also allege that the DCFS defendants subjected them to intentional infliction of emotional distress. In order to recover for the intentional infliction of emotional distress, a plaintiff must prove: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and, (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.* 585 So.2d 1205, 1209 (La. 1991).

The plaintiffs' claims fail on the first prong of this analysis. In order to show that conduct is extreme and outrageous,

> The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

*Id.*, quoting Restatement (Second) of Torts § 46 cmt. d (1965).

It cannot be said that the actions of the DCFS employees, in performing the discretionary work function of a child abuse investigation, rise to the level of "outrageous conduct" contemplated by Louisiana jurisprudence on intentional infliction of emotional distress. Indeed, extending this theory of tort recovery to the DCFS defendants would essentially allow an end-run around the broad protections that state employees receive under the qualified immunity doctrine for performing discretionary functions like investigating and reporting child abuse. Accordingly, this claim must be dismissed against the DCFS defendants.

**D. Defamation Claims**

17

Finally, the plaintiffs claim in their petition that the various defendants, including the DCFS defendants, defamed them by spreading rumors that they were abusing their children and Mr. Schanette was abusing drugs.

Louisiana law provides that "[a]ny person who, pursuant to Children's Code Article 609(A), is required to report the abuse or neglect of a child and knowingly and willfully fails to so report shall be fined not more than five hundred dollars or imprisoned for not more than six months, or both." La. Rev. Stat. ann. § 14:403. As succinctly explained by the Louisiana Fifth Circuit Court of Appeal, "[t]he purpose of Louisiana's statute on child abuse is to protect children by mandatory reporting of suspected cases of abuse. It would be most unfortunate if the threat of defamation claims should cast a chilling effect upon the willingness of persons to report suspected cases, where reasonable cause for suspicion exists. *Gross v. Haight*, 496 So. 2d 1225, 1228 (La. App. 5 Cir. 1986). The plaintiffs apparently request that, any time a child care worker suspects abuse, investigates, and reports findings that are later discovered to be unfounded, a defamation claim should accrue. This court agrees with the Louisiana Fifth Circuit that such a "chilling effect" would essentially preclude child care workers from reporting abuse except in the most dire of circumstances, and thus the plaintiffs may not pursue a defamation claim for remarks made during the abuse investigation.

Turning to the plaintiffs' defamation claim as it relates to Mr. Schanette, the plaintiffs make the strange argument that simply because the defendants' accusations of drug abuse were not immediately supported by a positive drug test (he submitted to tests on July 6 and 13, 2011, which were negative, but produced a positive drug test on July 21, 2011, *just eight days later*), this amounts to an actionable defamation claim. By admitting that Mr. Schanette produced a positive drug test, the plaintiffs cannot satisfy one of the five essential elements of a prima facie

defamation claim – that the allegations are false.  *Wyatt v. Elcom of Louisiana*, 34-786 (La. App. 2 Cir. 6/22/01); 792 So. 2d 832, 835 ("The five essential elements of defamation are defamatory words, publication, *falsity*, malice, and resulting injury.") (emphasis added) (citing cases). Accordingly, the plaintiffs' defamation claims must fail.

## CONCLUSION

In conclusion, the plaintiffs' official capacity claims against the DCFS defendants must be dismissed, as DCFS enjoys immunity under the Eleventh Amendment, and no exceptions to this broad grant of immunity are present in this case.  Additionally, the plaintiffs' individual capacity claims against the DCFS defendants must be dismissed, because the DCFS defendants are shielded by qualified immunity.  Finally, the plaintiffs' state law claims must be dismissed for failure to state a claim.

Lake Charles, Louisiana, this _____day of _____ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE