RECEIVED
IN LAKE CHARLES, LA.

FEB 10 2015

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| NIKKI SCHANNETTE, ET AL., | * | CIVIL ACTION NO. 2:12-CV-1416 |
| Plaintiffs, | * | |
| V. | * | JUDGE MINALDI |
| ROBYN DOXEY, ET AL., | * | |
| Defendants. | * | MAGISTRATE JUDGE KAY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court is David Doucette's ("Doucette") Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc. 24], to which the plaintiffs have filed a Response [Doc. 27]. For the following reasons, the Motion [Doc. 24] is **DENIED, IN PART,** and **GRANTED, IN PART.**

## FACTS & PROCEDURAL HISTORY

In May of 2011, the Department of Children and Family Services ("DCFS") received an anonymous report, which prompted an interview with the plaintiffs concerning one of their children.[1] On May 31, 2011, Barry Schannette, Sr., and Nikki Schannette's children were removed from their home by DCFS.[2] Nikki Schannette was subsequently arrested and informed by her lawyer that there were allegations that Mr. and Ms. Schannette were sexually abusing the children.[3] Ms. Schannette was bonded out the day after her arrest by her sister.[4] Barry Schannette, Sr., was also arrested, but was detained in jail because he had been unable to pay

---

[1] Compl. [Doc. 1] ¶ 21.
[2] *Id.* ¶¶ 22-23.
[3] *Id.* ¶¶ 43.
[4] *Id.* ¶ 39.

1

child support for his older children.[5] There were also allegations that Mr. Schannette was abusing drugs.[6]

On or about July 14, 2011, after Barry Schannette, Sr., was released from jail, and after Nikki Schannette lost visitation with her children, Nikki Schannette received a phone call from Doucette, a deputy with the Calcasieu Parish Sheriff's Office, stating that he wanted Mr. Schannette to come to his office to make a statement.[7] Mr. Schannette was working on the day in question, so Ms. Schannette told Doucette that she would bring Mr. Schannette to Doucette's office as soon as Mr. Schannette got off work.[8] A short time after this phone call, Ms. Schannette was driving with her sister and noticed a "caravan of officers" following them.[9]

Ms. Schannette was afraid, so she drove to the police station.[10] The officers followed Ms. Schannette into the parking lot and blocked her car, so she could not leave.[11] She tried to leave, but the deputies ordered her to pull back into the parking space and further blocked her in.[12] A uniformed deputy gave her no reason for the stop but instead ordered her to produce her driver's license, car registration, and proof of insurance.[13] There was "no compelling reason" for the stop.[14]

Doucette came up to Ms. Schannette's passenger window and told her that he wanted Mr. Schannette in his office immediately to give a statement regarding the sexual allegations against

---

[5] *Id.* ¶ 44.
[6] *Id.*
[7] Compl. [Doc. 1] ¶ 45.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Compl. [Doc. 1] ¶ 45.
[14] *Id.* ¶ 80

him.[15] Ms. Schannette again explained that Mr. Schannette was at work but that she would give him the message.[16] Ms. Schannette and her sister were detained for at least thirty minutes.[17]

Ms. Schannette picked up Mr. Schannette after work and took him to Doucette's office, where Mr. Schannette made a statement.[18] No criminal charges were ever filed against Mr. and Ms. Schannette, and their children were subsequently returned.[19]

The plaintiffs filed suit against the defendants on May 29, 2012, alleging a litany of causes of action.[20] Doucette is alleged to have acted under the authority of the Calcasieu Parish Sheriff's Office at all times relevant to this case.[21] Only Ms. Schannette's 42 U.S.C. § 1983 and state law tort claims against Doucette are relevant to this ruling. The claims against the DCFS defendants were dismissed in a separate ruling.[22] Doucette filed the instant Motion [Doc. 24] on December 5, 2014.

## LAW & ANALYSIS

### I.   Motion to Dismiss

Motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seek the dismissal of an action for failure to state a claim and challenge the sufficiency of a plaintiff's allegations. *See* Fed. R. Civ. Pro. 12(b)(6). The Fifth Circuit has stated that motions to dismiss are generally viewed with disfavor and should rarely be granted. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (additional citations omitted)).

---

[15] *Id.* ¶ 45.
[16] *Id.*
[17] *Id.* ¶ 80.
[18] Compl. [Doc. 1] ¶ 45.
[19] *Id.* ¶¶ 48, 52-53.
[20] *See* Compl. [Doc. 1].
[21] *Id.* ¶ 13.
[22] *See* Memo. Ruling [Doc. 19] and J. [Doc. 20].

3

In ruling on motions to dismiss under Rule 12(b)(6), courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Jackson v. NAACP*, No. 12-20399, 2013 U.S. App. LEXIS 20493, at *9 (5th Cir. Oct. 8, 2013) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (additional citation omitted)). "The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff." *Herbert v. Delta Airlines, Inc.*, No. 11-cv-1574, 2012 U.S. Dist. LEXIS 93848, at *6 (W.D. La. Jun. 5, 2012) (citing *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (citations omitted)). However, conclusory allegations are not to be accepted as true, and courts "are not bound to accept as true a legal conclusion couched as a factual conclusion." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted)).

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The allegations must "raise the right to relief above the speculative level." *Id.* at 555. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

II.     **42 U.S.C. § 1983 and Qualified Immunity**

42 U.S.C. § 1983 "provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right." *Whittington v. Maxwell*, 455 Fed. Appx. 450, 455-56 (5th Cir. 2011) (citing 42 U.S.C. § 1983). "[Q]ualified immunity—which shields Government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights'—is

both a defense to liability and a limited 'entitlement not to stand trial or face the other burdens of litigation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal citations omitted).

"Qualified immunity serves to ensure government employees are not impeded from their public work to defend frivolous actions." *Porter v. Valdez*, 424 Fed. Appx. 382, 386 (5th Cir. 2011) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "When an officer argues that he is entitled to qualified immunity from suit, [the court] first view[s] the evidence 'in the light most favorable to the party asserting the injury' and decide[s] if 'the facts alleged show the officer's conduct violated a constitutional right.'" *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In order to overcome a claim of qualified immunity, a plaintiff must plead facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The district court, in its discretion, may consider either of the two prongs first. *Id.* (*citing Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The court will consider the violation prong first, and the "clearly established" prong second.

### A. Did Doucette Violate Nikki Schannette's Fourth Amendment Rights?

The Fourth Amendment guards individuals against unreasonable searches and seizures by the state. *See* U.S. CONST. amend. IV. A seizure occurs when a reasonable person would feel that she was not free to leave in view of all circumstances surrounding the incident, *U.S. v. Mask*, 330 F.3d 330, 336 (5th Cir. 2003) (citations omitted), and "[t]raffic stops are considered seizures within the meaning of the Fourth Amendment." *United States v. Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir.2010) (citing *United States v. Grant*, 349 F.3d 192, 196 (5th Cir.2003) (additional citation omitted)). Stopping a motor vehicle and detaining its occupants, even for a

moment, is a seizure for Fourth Amendment purposes. *City of Indianapolis v. Edmond*, 531 U.S. 32, 40 (2000); *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Grant*, 349 F.3d at 196. A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing. *Chandler v. Miller*, 520 U.S. 305, 308, (1997). In assessing the reasonableness of a traffic stop, courts consider (1) whether the officer's actions were justified at their inception, and (2) whether the scope of the officer's actions was "reasonably related . . . to the circumstances that justified the stop." *Banuelos-Romero*, 597 F.3d at 766 (citing *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir.2004) (en banc)).

An officer must possess "an objectively reasonable suspicion that some sort of illegal activity . . . occurred, or is about to occur, before stopping the vehicle" in order for the traffic stop to be justified at its inception. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir.2005) (citation omitted). "Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc). "The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *INS v. Delgado*, 466 U.S. 210, 217 (1984)). In judging the reasonableness of a stop, the court looks to "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown v. Texas*, 443 U.S. 47, 51 (1979).

According to the complaint, Ms. Schannette was prevented from leaving the police department parking lot by a number of police officers. This constitutes a seizure under the Fourth Amendment because a reasonable person would not have felt that she was free to leave under those circumstances. She was also given no reason for her detention beyond Doucette's

6

request to speak with her husband. Taking the allegations in the complaint as true, no reason to pull over Ms. Schannette existed. There is no evidence from the complaint that the police officers, including Doucette, had probable cause or reasonable suspicion that Ms. Schannette was engaged in criminal activity at that time.

Although Doucette alleges in his answer that he at all times acted in good faith, even if properly considered, this assertion is irrelevant. *See Mask*, 330 F.3d at 337 (citing *Michigan v. Chesternut*, 486 U.S. 567, 576 n. 7 (1975) ("[T]he subjective intent of the officers is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted.")). Additionally, Doucette cites no case law for the proposition that a Fourth Amendment violation does not occur when there is a warrantless stop in absence of reasonable suspicion of criminal activity under these circumstances.[23] Therefore, a motion to dismiss under this prong of qualified immunity would be inappropriate at this time. Taking the plaintiffs' well-pleaded complaint as true, Doucette is not entitled to qualified immunity on this issue.

### B. Was Nicki Schannette's Right to Be Free from Warrantless Seizure "Clearly Established"?

In response to this prong, Doucette argues that "[t]here is no evidence, fact, statute, rule or case law demonstrating that the actions and/or omissions of the defendant set forth in the complaint, even if true, violates [sic] a clearly established law."[24] The actions of a law enforcement officer violate clearly established law when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have

---

[23] The court notes that routine automobile stops in compliance with *Martinez-Fuerte* are an exception to this general rule, but the facts do not support an application of such an exception. *See U.S. v. Martinez-Fuerte*, 428 U.S. 543, 566-67 (1976).

[24] Memo. in Supp. of Mot. to Dismiss [Doc. 24-1], at 5.

7

understood that what he is doing violates that right.'" *Id.* at 2083 (*citing Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While a case directly on point is not necessarily required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *James v. Dallas Hous. Auth.*, 526 Fed. Appx. 388, 392 (5th Cir. 2013) (citing *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009)). It is not required that the "very action in question has previously been held unlawful," but the unlawfulness must be apparent in light of pre-existing law. *Anderson*, 483 U.S. at 640 (citations omitted).

Under the Fourth Amendment, it has long been held that a warrant or exigent circumstances is required for a search or seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 20 (1968) (citations omitted). *Terry v. Ohio* and its progeny "only created a very narrow exception to the broad general rule that the seizure of a person 'must be supported by the long prevailing standards of probable cause.'" *U.S. v. Tookes*, 633 F.2d 712, 715 (5th Cir. Unit B 1980) (quoting *Dunaway v. New York*, 442 U.S. 200, 212 (1979)). The plaintiffs allege in the complaint that there was no reason that Ms. Schannette was detained. This assertion that there was no reason to seize Ms. Schannette is sufficient to permit an inference that Doucette had neither probable cause nor reasonable suspicion for doing so. *Terry*—which allows for investigative stops based on articulable, reasonable suspicion—was decided in 1968. *Terry*, 392 U.S. at 30-31. This ruling has put the minimum requirements for a warrantless stop beyond debate.

The facts alleged in the complaint are easily distinguishable from those in *Illinois v. Lidster*, 540 U.S. 419, 425 (2004). *Lidster* concerned information-seeking highway stops, and as noted by the Court "the concept of individualized suspicion has little role to play." *Id.* at 424.

*Delaware v. Prouse* addressed the constitutionality of discretionary, suspicionless stops directly and found that they do not justify the intrusion upon Fourth Amendment interests which such stops entail. *Delaware v. Prouse,* 440 U.S. 648, 662-64 (1979). Doucette needed articulable, reasonable suspicion that criminal activity was afoot, and the complaint alleges that he had none. Because the law is clearly established on this issue, Doucette's actions cannot be considered objectively reasonable at the time.

### III. Nikki Schannette's State Law Claims

Ms. Schannette brings two claims under Louisiana law. The first is for the tort of false imprisonment. Ms. Schannette's second state law claim is for intentional infliction of emotional distress.

#### A. State Law Qualified Immunity

Louisiana offers its public officials qualified immunity for violations of state law. *See Moresi v. State Through Dep't of Wildlife & Fisheries,* 567 So.2d 1081, 1094 (La. 1990). If the defendant shows that the state constitutional right alleged to have been violated was not clearly established, the defendant is entitled to qualified immunity. *Id.*

#### B. False Imprisonment

In order for a plaintiff to recover for false imprisonment or arrest in Louisiana against a defendant police officer, she must prove that she was unlawfully detained by the police against her will. *Kyle v. City of New Orleans,* 353 So.2d 969, 971 (La. 1977). A stop and detention is permissible pursuant to Louisiana Code of Criminal Procedure Article 215.1, which allows a police officer who has "reasonable suspicion" that a person "is committing, has committed, or is about to commit an offense" to stop the person and question her briefly. LA. CODE CRIM. PROC. art. 215.1. Louisiana's statute authorizing investigatory stops is in line with the constitutional

guidelines set forth by the Supreme Court of the United States in *Terry*. *Harrison v. State Through Dept. of Public Safety and Corr.*, 721 So.2d 458, 462-63 (La. 1998). Therefore, for the same reasons that Ms. Schannette's Fourth Amendment claim cannot be dismissed at this time, her false imprisonment claim also survives, as the complaint states that there was "no compelling reason" for being detained.

### C. Intentional Infliction of Emotional Distress

To recover for intentional infliction of emotional distress under Louisiana law, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* "The distress suffered must be such that no reasonable person could be expected to endure it. Liability only arises where the mental suffering or anguish is extreme." *Id.* at 1210. "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." *Id.*

Ms. Schannette alleges that a number of police officers, including Doucette, started following her for no reason and boxed her into a parking space outside of the police department. She was thereafter detained for thirty minutes. Ms. Schannette also contends that she suffered "extensive trauma, worry, hardship, and emotional distress" as a result of the events.[25] The role of the court on a motion to dismiss is not to weigh evidence or determine veracity. However, the complaint does not allege any facts indicating Doucette desired to inflict severe emotional

---

[25] Compl. [Doc. 1] ¶ 121.

distress or knew or should have known that severe emotional distress was certain or substantially certain to result from his conduct. When a plaintiff fails to allege all of the elements of a cause of action, a motion to dismiss is proper. *See Molette v. City of Alexandria,* No. Civ.A. CV040501A, 2005 WL 2445432, at *8 (W.D. La. Sept. 30, 2005).

Lake Charles, Louisiana, this 10 day of February, 2015.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE